# CHARLESTON.

## C. J. TAYLOR *et al. v.* STURM LUMBER COMPANY.

Submitted February 28, 1922.    Decided March 14, 1922.

1. DAMAGES—*In Action for Damages Caused by Delays Proof of Loss per Day and Number of Days Lost Held Ample Data.*

   In an action for damages for breach by the contractee, of a logging contract to be executed with men and teams, causing the contractor delay and consequent injury for which he claims damages by way of gains prevented as well as loss of time, proof of the number of days lost in fractional parts or otherwise and the rate of alleged loss per day affords ample data for assessment of the damages. (p. 533).

2. SAME—*Damages for Breach of Contract by Delay Are Measured by What Men and Teams Would have Earned in Ordinary Service.*

   If, in such case, the contract has been fully performed and the compensation paid, the damages arise out of mere loss of time, not loss of anticipated profits, and are measured by what the teams and men used in the work would have earned in other ordinary service, at the prevailing rate for such service, in the community in which the contract was performed, not by what they would have earned in the contract work. in the absence of delay. (p. 534).

3. SAME—*Verdict Based on Contract Right, and Not on What Men and Teams Would Have Earned in Ordinary Service, Held Excessive.*

   A verdict allowing damages on the basis of the contract rate, in such case, without proof of any special or peculiar circumstances calling for variation of qualification of the general rule, is excessive. (p. 534).

4. SAME—*Failure to Mitigate Damages Caused by Breach Cannot Limit Recovery Where Plaintiff Relied on Defaulting Party's Promise to Make Good.*

   Though the law imposes duty upon one party to a contract to mitigate the damages caused him by a breach thereof by the other, if he can do so without unreasonable effort or expense, his recovery cannot be limited by his failure to do so, if he omitted such duty in reliance upon promises of the defaulting party to make good his delinquencies and relieve from their consequences. (p. 534).

5. SAME—*Proof of Plaintiff's Ability to Mitigate Damages for Breach Does Not Entitle Defendant to Peremptory Instruction.*

Proof of ability on the part of a plaintiff in an action for damages arising out of a breach of a contract, to mitigate the damages, within the meaning of the law, does not entitle the defendant to a peremptory instruction to find for him, nor make it the duty of the court to set aside a verdict for the plaintiff, in the absence of other ground for the motion for a new trial. (p. 536).

6. TRIAL—*Instructions Hypothetically Submitting Right to Recover Such Damages as Plaintiff Was Entitled to, if Finding for Him, Held Not Erroneous.*

Instructions hypothetically submitting to the jury the question of plaintiff's right of recovery and telling them to allow such damages as the plaintiff is entitled to, in the event of a finding in his favor, are not erroneous for failure to define the measure of damages, nor for failure to give the jury conditional directions as to a claim of mitigation of damages in favor of the defendant. (p. 535).

7. APPEAL AND ERROR—*Where Trial Court Failed to Require Plaintiff to File Remittitur or Have Verdict Set Aside, Judgment Will be Reversed and Cause Remanded Without Disturbing Verdict.*

If a jury, in assessing damages, allows too much by a sum definitely ascertainable as to amount, from the evidence, by reason of the adoption of a legally erroneous basis of estimate and allowance, it is the duty of the trial court, on the motion for a new trial, to put the plaintiff to his election as to whether he will remit the excessive sum included in the verdict or suffer the verdict to be set aside; and, if this duty is omitted by such court and judgment rendered on the verdict, the appellate court will reverse the judgment, without disturbance of the verdict, and remand the case for proper action by the trial court, on the verdict. (p. 538).

Error to Circuit Court, Randolph County.

Action by C. J. Taylor and others as partners against the Sturm Lumber Company. Judgment for the plaintiffs, and the defendant brings error.

*Reversed and remanded.*

*H. G. Kump,* for defendants in error.

*Talbott & Hoover* and *R. H. Allen,* for plaintiff in error.
error.

POFFENBARGER, PRESIDENT:

The principal contention against the validity of the judgment in favor of the plaintiffs, for damages for breach of a logging contract, brought up by this writ of error, is that the evidence is not sufficient to sustain the verdict, its sufficiency having been challenged by a motion to exclude it, a request for a peremptory instruction to find for the defendant and a motion to set aside the verdict. Rulings respecting the admission and rejection of evidence and the giving of instructions at the instance of the plaintiffs are also made subjects of assignments of error.

The written contract between the parties, dated, May 24, 1919, bound the plaintiffs to skid something less than 500,000 feet of logs, at the rate of 6,000 feet per day and at the price of $4.00 per thousand feet, payable monthly according to scale, and an additional 25 cents per thousand on the completion of the work. The work to be done consisted of the hauling of logs from the stumps and placing them on skidways to be constructed by the plaintiffs, at a tram road, from which they were loaded on a truck and conveyed to the saw-mill. Construction of the tram road, operation of the truck and cutting of the timber were devolved upon the defendant, and it agreed to take the logs from the skidways fast enough to permit 6,000 feet per day to be put on them.

At the date of the contract, the plaintiffs had only one team, but they purchased another with harness etc. from the defendant, on credit, the purchase money to be charged against the compensation for their work. Feed for their teams was to be furnished by the defendant at cost and they and their employees were to be boarded by it at $1.00 per day for each person. Lumber and nails for construction of a stable or barn on the premises were also to be provided by the defendant.

On or about May 28, 1919, the plaintiffs were on the ground with their teams and ready for work, but the tram

road and truck to be provided by the defendant had not been made ready for operation, and the skidways could not be constructed, for they had to conform in location with the tram road and, in height, with the truck. Pending construction or repair of the tram road and provision of the truck, the plaintiffs hauled and dumped into a hollow, within convenient reach of the tram road location, logs estimated to contain 40,000 feet, which had to be hauled a second time later on. On this account, loss of time and earnings is claimed. After the tram road, truck and skidways had been provided, there was further loss of time, according to the claim of the plaintiffs, due to the failure of the defendant to cut logs for hauling and take them from the skidways, after hauling, fast enough to permit the skidding of 6,000 feet per day. They claimed right under the contract to earn an income of $24.00 per day and swear to their ability to do so with the equipment they had. According to their testimony, they skidded, on one occasion, more than 6,000 feet of logs hauled from the most distant points on the job, in a day. They profess to have kept an accurate account from which they swear they are able to compute their loss of time and claim to have lost about 59 days on account of the failure of the defendant to keep them in logs, at one end of the job and space for logs at the other. The jury allowed them 56 days, making the damages $1,344.00 from which there was deducted $269.04, the amount of their indebtedness to the defendant.

At the rate of 6,000 feet per day, it should have required about 75 days for the skidding of the logs scaling in all 446,673 feet. The plaintiffs were on the job about 180 working days. Testifying from his memoranda, one of them shows work for the defendant, by the day, at work not within the skidding contract, for 34 days and two hours paid for by credit on the account. For part of that time, one or both teams were idle. They were absent and unable to work for about twelve days. Allowing 75 days, as being necessary to the skidding, 34 days at non-contract work and 12 days of absence and inability to work, they account for 121 days, leaving 59 days of the 180 day period,

consumed in the delays alleged to have been occasioned by failure of the defendant to cut and remove logs as required by its contract. In this evidence, there is ample foundation for an assessment of damages, if the theory of the plaintiffs, as to right of recovery is sound. There must be data in the evidence, for the assessment, of course, but, in the figures submitted, there is no lack thereof. Loss of time, with the extent thereof, is definitely shown, and, at the rate claimed, the result in money is obvious and certain.

A claim of excessiveness in the award is based upon the rate adopted. All of the timber contemplated by the contract was skidded and credit therefor has been allowed by the defendant at the contract price, $4.25 per thousand feet. But the delays occasioned by the defendant prolonged the time of performance. It is insisted that the rate of $4.00 or $4.25 per thousand is not the correct basis on which to calculate the damages for the time unnecessarily bestowed upon the work, and that the calculation should be made upon the basis of the value of the services of the men and teams for the 56 days, measured not by the contract price, but by what such services were worth in the market, the daily wages of teams with men, $8.00 each per day or $16.00 per day for the two, as indicated by the compensation paid for the day-work done. Nothing of either compensation or profit in the contract price for the skidding was lost or prevented. The work was all done and has been paid for. The loss was in time only, which would have been devoted to some other work. There is no proof that plaintiffs had any other contract awaiting them, in the performance of which an equal profit could have been made. Allowance of the profit of $8.00 per day, which has been paid, by way of damages, in this action would be a duplication of that profit, unless it can be assumed that an equal profit could have been made on the teams in other work. As there is no evidence of such ability, the allowance would stand upon a bare assumption only. The law does not permit an allowance of more than what the reasonable value of the service would have been, if the men and teams had been employed in ordinary work, or, in other words, the reasonable value of

such services. *Marshall* v. *Beard*, 36 Barb. (N. Y.) 31;
*Maryland Ice Co.* v. *Arctic Ice Machine Co.*, 79 Md. 103;
*City of Chickasha* v. *Hollinsworth*, (Okl.) 155 Pac. 859;
*Michael Seretto* v. *Rockland etc. Ry. Co.*, 101 Me. 140;
*Hardway-Wright Co.* v. *Bradley Bros.*, 163 Ala. 596;
*Strobel Steel Construction Co.* v. *Sanitary District*, 160
Ill. App. 554; *Meyer* v. *Haven*, 70 App. Div. (N. Y.) 529;
17 C. J. 854. As to whether a different state of facts
would apply a different measure of value or damages, we
enter upon no inquiry. It suffices to say that, upon the
evidence, the verdict calls for too large an amount.

Enough has been said of the character of the evidence,
to make it manifest that there was no error in the adminis-
sion of the oral evidence of J. L. Daft, one of the plain-
tiffs, based upon his personal knowledge and his recollec-
tion refreshed by the memoranda to which he referred from
time to time, in the course of his examination as a witness,
nor in the overruling of the motion to exclude all of the
evidence adduced by the plaintiffs. Taylor's evidence was
properly admitted. It supplemented that of Daft and was
sufficiently definite.

Nor did the court err in its refusal to compel Daft to
show something on his book that it admittedly did not
contain, or to demonstrate to the jury, by an exhibition of
his book, a lack of memoranda, which he admitted. It did
not in terms disclose the lost time. He demonstrated it
from data it did contain, in the manner hereinbefore in-
dicated.

In none of the three instructions given upon the request
of the plaintiffs, nor in the declaration to which one of them
refers, is any measure of damages prescribed. Each of
said instructions hypothetically submits the theory of right
of recovery upon breaches of the contract by the defend-
ant, resulting in damages to the plaintiffs. In this respect,
they are correct as far as they go, but they are incomplete.
If the defendant desired completion thereof by prescrip-
tion of the measure of damages, it should have asked for an
instruction upon the subject. Plaintiffs' instruction No. 2
may be technically erroneous, on account of its failure to

refer to the evidence, but the error, if any is harmless. In two of the instructions given upon request of the plaintiffs and six given at the instance of the defendant, necessity of limitation of the verdict to the evidence was brought to the attention of the jury.

In view of the evidence adduced by the defendant, tending to prove the damages claimed by the plaintiffs could have been mitigated or largely avoided by enlargement of the skidways, it is contended that the instructions given at the instance of the plaintiffs, all of which were binding in effect, as to right of recovery, should have included a conditional direction to the jury to exclude from their assessment such damages as could reasonably have been prevented by the plaintiffs, by such enlargement or addition, on the principle or theory of duty on their part, to mitigate the damages. The measure of damages was not dealt with specifically in any of the instructions. It was stated, if at all, in very general terms, in connection with the submission of the question of right of recovery. In each instance, the instruction merely told the jury, in the event of a finding of right of recovery, to award the plaintiffs such damages as they had sustained. In this, no specific rule as to the measure of damages, nor any direction to find in accordance with any rule as to the amount, is perceived. As to that matter, the instructions are virtually silent and clearly not binding. Indeed, they are all complained of in the brief, on the ground of lack of prescription of the measure of damages. The argument condemns them for omission of the measure of damages and then condemns them again for inclusion thereof. The first assumption is correct but innocuous.

As to right of recovery, there is considerable conflict in the evidence. By their own testimony and that of several other witnesses, the plaintiffs prove failure both to cut and to remove logs in accordance with the contract. This is opposed by evidence adduced by the defendant, but the opposing evidence is slighter in quantity and less positive and definite in character than that of the plaintiffs. It was the clear province of the jury to determine the ques-

tions of preponderance of evidence on this point and the credibility of the witnesses. The court was under no. duty, therefore, to give the peremptory instruction requested by the defendant, nor to set aside the verdict, on the theory of insufficient evidence to sustain a finding of liability.

But it is said the evidence of ability of the plaintiffs to mitigate the damages or avoid them, by enlargement of the skidways or construction of additional skidways, precludes right in the plaintiffs to any verdict at all. This position is manifestly untenable. Right to nominal damages at the least is indisputable. Right to some substantial damages represented by the second handling of the 40,000 feet of timber, occasioned by delay in providing the tram road and truck, is equally clear. The expense of enlargement of skids and building additions, if incurred, would be another incontrovertible item. It is impossible to exclude all of the damages on this theory.

Whether this evidence of power to avoid or reduce injurious consequences makes the verdict excessive is an entirely different question. It may be that sufficient skidway space could have been provided at an expense of $25.00 or some other small amount. But this fact, if established, must be taken in connection with others. There is proof of repeated demands upon the defendant to perform its contract and of promises on its part, made by its superintendent, to comply therewith. Its attention was repeatedly called to the delays and losses caused by failure to move the logs fast enough and promises to relieve the situation were made. Ordinarily, under such circumstances, there is no duty on the part of the injured party to take further steps for his own protection. He may rely upon the notice and promises made. *Ford* v. *Ill. Refrigerator Co.,* 40 Ill. App. 222; *Graves* v. *Glass,* 86 Ia. 261; *Cronan* v. *Stutsman,* 168 Mo. App. 46; *Henry Hall Cons. Co.* v. *Sundstrom & Sreatton Co.,* 138 App. Div. (N. Y.), 548; *Ill. Cent. R. Co.* v. *Doss,* 137 Ky 659; *Lilliard* v *Kentucky etc. Co.,* 134 Fed. 168; *Kentucky etc.* v. *Lilliard,* 160 Fed. 34; *McEwan v. McLeod,* 46 U. C. Q. B. 235. Upon the evidence just referred to the jury could find that the plaintiffs were induced by the con-

duct and promises of the defendant to forego resort to measures for their own protection.

Seeing excessiveness in the verdict by reason of the allowance of $24.00 per day for the 56 days, instead of $16.00, the amount the plaintiffs charged for their day-work, which is evidence of the value of such work and the actual loss of the plaintiffs, the trial court should have put them to their election to remit one-third of the amount allowed them or suffer the verdict to be set aside, the amount of the excess being clear and free from doubt. *Clark* v. *Lee*, 76 W. Va. 144; *Hall* v. *Philadelphia Co.*, 74 W. Va. 172; *Unfraid* v. *Railroad Co.*, 34 W. Va. 260 The omitted duty of the trial court can yet be performed, upon reversal of the judgment and remand of the case for the procedure just indicated We will reverse the judgment and remand the case for proper action on the verdict by the trial court.

*Reversed and remanded.*