765 P.2d 680

**G. Emery DAVIS and Alice Davis, his wife, Michael Davis and Rayce Davis, Plaintiffs–Appellants,**

v.

**FIRST INTERSTATE BANK OF IDA-HO, N.A., Defendant–Respondent.**

**Sam and Neva DAVIS, husband and wife, and Jimn and Carol Davis, husband and wife, Plaintiffs–Appellants,**

v.

**FIRST INTERSTATE BANK OF IDA-HO, N.A., Defendant–Respondent.**

No. 16977.

Supreme Court of Idaho.

Dec. 5, 1988.

Smith, Hancock & Rammel, Rexburg, for plaintiffs-appellants. J.D. Hancock, argued, Rexburg.

St. Clair, Hiller, Wood & St. Clair, Idaho Falls, for defendant-respondent. Morton B. Hiller, argued, Idaho Falls.

BISTLINE, Justice.

This case involves starving sheep and a promise to lend money. The plaintiffs, Emery and Sam Davis, own sheep which run together. The defendant bank concedes it had a valid contract with plaintiffs to lend money for the sheep ranching operation—and that the bank breached this contract when it failed to lend the plaintiffs money in December of 1983. The trial court granted defendant's motion for summary judgment on the ground that plaintiffs failed to mitigate their damages by seeking alternative financing. We reverse.

Plaintiffs Emery Davis (and his family) and Sam Davis (and his family) own separate sheep ranches, but the sheep run together. In 1982 plaintiffs began financing their operations through defendant First Interstate Bank of Idaho (bank). The bank made the plaintiffs an operating loan com-

mencing in 1982. Plaintiffs were unable to pay the full amount at the end of the 1982 budget year. In 1983 the bank continued to finance plaintiffs. The parties negotiated for financing in 1984, but were unable to reach an agreement. This dispute centers on the bank's refusal to finance plaintiffs for the 1984 budget year. For the purposes of summary judgment, the bank concedes that it had a contractual duty to lend plaintiffs money for the sheep ranching operation for the year commencing in December of 1983, and that it breached this duty when it failed to do so.

Plaintiffs subsequently brought suit, seeking recovery under four separate causes of action: (1) breach of contract, resulting in starved, malnourished sheep; (2) gross negligence, with a prayer for punitive damages, for failure to notify plaintiffs that their operation would not be financed; (3) damages for loss of credit standing; (4) damages for extreme humiliation, anguish, mental and physical distress and suffering resulting from intentional harassment. Plaintiffs made a timely demand for jury trial.

The trial judge granted the bank's motion for summary judgment on the basis that plaintiffs failed to mitigate their damages. Specifically, the trial court found that plaintiffs did not take any action to obtain an alternate source of financing.

The scope of review when a grant of summary judgment is challenged on appeal is limited to determining only whether there exist genuine issues of material fact and whether the prevailing party is entitled to judgment as a matter of law. *Gro–Mor, Inc. v. Butts,* 109 Idaho 1020, 712 P.2d 721 (Ct.App.1985). *See also* I.R.C.P. 56(c). Facts in the existing record, including all reasonable inferences arising therefrom must be liberally construed in favor of the nonmoving party; the court must look to the totality of the motions, affidavits, depositions, pleadings, and attached exhibits, not merely to portions of the record in

isolation. *Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1986).

█ The duty to mitigate, also known as the doctrine of avoidable consequences, provides that a plaintiff who is injured by actionable conduct of the defendant, is ordinarily denied recovery for damages which could have been avoided by reasonable acts, including reasonable expenditures, after the actionable conduct has taken place. D. Dobbs, *Remedies* § 3.7, at 186 (1973). *See also Casey v. Nampa & Meridian Irrigation Dist.,* 85 Idaho 299, 305, 379 P.2d 409, 412 (1963). The burden of proof is on the party causing the alleged damage, *Eliopulos v. Kondo Farms, Inc.,* 102 Idaho 915, 191, 643 P.2d 1085, 1090 (Ct.App.1982), the bank in this instance. The reasonableness of the method selected to minimize damages is an issue to be resolved by the jury. *Casey, supra,* 85 Idaho at 305, 379 P.2d at 412, cited in *Eliopulos, supra,* 102 Idaho at 919, 643 P.2d at 1090.

For the purposes of summary judgment, the bank concedes that it had a contractual duty to lend plaintiffs money for their sheep ranching operation for the year commencing in December of 1983. The bank further concedes for summary judgment purposes that it breached this contractual agreement when it failed to lend plaintiffs money in December of 1983. The district court granted summary judgment in favor of the bank on the ground that once the bank breached its contract, plaintiffs failed to seek alternative means of financing. The basis for the district court's ruling, however, is not supported by the record.

█ The affidavit of Sam Davis unequivocally avers that once the bank failed to honor its commitment to lend the needed money, he then sought alternative financing at both the Idaho First National Bank and the Farmers Home Administration. Financial statements were filled out at both institutions (exhibits A and B), but Sam Davis was told that he lacked sufficient collateral.[1] These facts must be construed

---

1. The affidavit of Sam Davis provides:
   When First Interstate did not honor its commitment to provide the money for the supplemental feed for the ewes I then made contact

to Idaho First National Bank and Farmers Home Administration to see if we could get some sort of financing to take care of the necessary feed. First Interstate also cut me

most favorably to plaintiffs. Sam Davis tried to obtain alternative financing. The law, however, does not demand that he so obtain it: "The doctrine [of avoidable consequences] requires reasonable effort to mitigate damages. Thus, if reasonable, the efforts need not be successful." J. Colamari & J. Perillo, *Contracts* § 14–5, Avoidable Consequences at 539 (2d ed. 1977). We conclude that there exists a question of material fact, appropriate for resolution by a jury, as to whether plaintiffs exercised reasonable care to mitigate their damages. Thus, summary judgment was erroneously granted.

Furthermore, it is questionable whether plaintiffs were under a duty to mitigate at all. The affidavit of Sam Davis states that bank officials assured plaintiffs that the bank would not let the sheep starve.[2]

Professor McCormick in his *Handbook on the Law of Damages* § 38, at 141 (1935), notes that under the doctrine of avoidable consequences, there is no duty to act where the wrongdoer gives assurances:

> [T]he plaintiff's failure to act to guard against injury will not affect his recovery where such failure was due to assurances given him by the defendant himself.[64]

---

[64] *Clenchfield Coal Corporation v. Hayter,* supra, note 62; *Florence Fish Co. v. Everett Packing Co.,* 111 Wash. 1, 188 P. 792 (1920) (breach of contract to furnish boat to assist plaintiff in fishing; plaintiff not required to secure boat elsewhere where defendant did not refuse, but repeatedly promised to comply); *Taylor v. Sturm Lumber Co.,* 90 W.Va. 530, 111 S.E. 481, 484 (1924) (damages for breach of a logging contract, in that defendants delayed in taking logs; plaintiff not required to build additional skidways where defendant promised to relieve the delay); *Kaufmann v. Delafield,* 224 App. Div. 29, 229 N.Y.S. 545 (1928) (plaintiff, who might have sold stock without loss, may recover damages from retaining it on faith of defendant's reassurances); *Eastern Advertising Co. v. Shapiro,* 263 Mass. 228, 161 N.E. 240 (1928) (plaintiff contracting to furnish billboards, where advertiser failed to furnish posters, need not relet space where advertiser said he would take care of matter).

Thus, the assurances of bank officials informing plaintiffs that the sheep would be cared for on a day to day basis preclude summary judgment on the basis that plaintiff failed to mitigate damages. If the ultimate trier of fact should determine the bank assured plaintiffs that the sheep would be cared for, no duty to mitigate would arise.

■ Finally, even assuming, *arguendo,* that plaintiffs were required to mitigate damages and failed to do so by seeking alternative financing, summary judgment would not be appropriate as to all causes of action. Not only did the plaintiffs allege an action for breach of contract, but also for gross negligence and infliction of mental and physical distress. These causes of action sound in tort, and, based on our review of the complaint, are unrelated to the facts underlying the breach of contract claim. Thus, even if plaintiffs are held duty-bound to mitigate damages under the contract claim, it may be that no corresponding duty would arise as to the claims sounding in tort.

We reverse the summary judgment. The cause is remanded to the district court for further proceedings.

---

out of the money it agreed to pay for the feed to finish fattening out the lambs. When I went to Idaho First National Bank in Rexburg and filled out a financial statement, they flat out told me that without any collateral they could loan me no money. I got the same response at Farmers Home Administration in Rexburg.
R. at 125–126.

2. The affidavit of Sam Davis provides:

During the first week of December 1983 it was extremely cold and we had a terrible blizzard which dumped a lot of snow. The ewes were without adequate feed and we knew from our past experience that they had to be fed supplemental feed pellets in order to prevent malnutrition. My uncle Emery made contact with First Interstate Bank to explain the need for the supplemental feed right after the blizzard. Tom Lloyd assured him that they would take care of the sheep.

I went into First Interstate Bank during the first of December when the next to the last load of lambs were sold and asked Tom Lloyd what we were going to do about getting grain to those pregnant ewes who were in dire need of supplementary feed. He spoke with Phil Davies in Boise and told me that 'The bank would furnish us money to take care of the sheep on a day to day basis.'
R. at 125.

Costs to appellants; no attorney fees on appeal.

BAKES, HUNTLEY and JOHNSON, JJ., concur.

SHEPARD, Chief Justice, concurring in result only.

I concur only in the result, *i.e.*, the reversal of summary judgment. The *obligation to lend money* was denied by the bank, and the existence of such an obligation was only conceded at the summary judgment point for the purpose of eliminating any question of fact. No authority is cited for the existence of such a cause of action, and I would assume only the most extraordinary circumstances would support such a cause of action.