BARRON, J.
This is an action of contract in which the plaintiff seeks to recover $180 for breach of a written contract to purchase certain advertising in the plaintiff’s directory. The only questions raised pertain to the amount of damages.
There was evidence tending to show that on April 21, 1947, an order was given by the defendant to the plaintiff for an advertisement in the plaintiff’s directory; that said order was received by the plaintiff on April 22, 1947; that no billing for such advertisement or memorandum of acknowledgement of the order was made by the plaintiff; that on June 17, 1947, the defendant received an invoice for the order for advertising; that the defendant upon becoming aware that such advertising was in fact not a renewal of its previous advertising with another company, immediately notified the plaintiff on June 17 and 23, *[85] 1947, that the order was made in error and requested an immediate cancellation of the same; that the defendant acknowledged receipt of said notice of cancellation on June 25, 1947, stating that there were no provisions for cancellation of said order because the “contract was executed and no provision is made for unilateral cancellation by either party.”
The defendant stated that there was no commission paid to any salesman for procuring the advertisement. In a deposition, in answer to a question by the defendant as follows:—
“Q. 21. With reference to the agreement or order for the advertisement in your directory made by the defendant, please state:
(c) The actual expense incurred by you in the placing of this advertisement at the time that you received the notice of cancellation, itemizing and specifying in detail such expense,” the answer of the plaintiff was as follows:
“A. 21. (c) This is difficult to ascertain as the only matter left undone prior to printing of the book is actually the printing of the ad itself which costs no more than 3 cents. Paper has to be ordered in advance for the book, contracts made for the printer for printing and publication and space is reserved as soon as a signed contract is obtained. The books were locked and spac'e could not be cancelled as this publication was printed on September 8, 1947. At the time of receipt of the cancellation, the directory was already in the hands of the printers.”
A copy of the contract was submitted in evidence. It provided that for the sum of $180 the plaintiff was to publish an advertisement of the defendant in a space of two and one-half inches single column in the 1947-1948 issue of a classified directory, 50,000 copies of which were to be distributed annally by the plaintiff free to Eastern states manufacturers, business and industrial buyers. The rates indicated on the contract ran from $60 for a one-half single column, with increased graduated charges for increased space to $1500 for one full page.
The only evidence offered by the plaintiff as to its damage for breach of the alleged contract was that the original order was in the sum of $180 and that it sought as its damage the total amount of its order without allowing for any of its expenses in connection with the same.
*[86] The defendant filed the following requests pertaining to damages:—
“4. That if it shall appear that the defendant did enter into a valid existing contract, that the plaintiff is only entitled to recover such damages as should be equivalent to the net profit received from such alleged order.
5. That in determining what damages the plaintiff should be entitled to in the event the alleged contract is held to be valid, all expenses of the plaintiff shall be considered in determining the amount of such damage.
6. Damages are to be assessed on the footing of what the plaintiff’s profits would have been if the contract had been carried out by the defendant according to its terms and the plaintiff is to be made whole for what he has thus lost because of the defendant’s breach.
7. In order to determine the damages of the plaintiff, it is necessary to take into account the expense of the plaintiff in completing the contract on its part.
8. The plaintiff cannot have the benefit of a contract and at the same time void the expense to which, according to the terms of the contract, it would have been subjected to the performance.
9. The plaintiff cannot be put into a better position than it would have occupied if the contract had been fully performed.”
The court denied these requests and made the following memorandum after each request :■— “I am not satisfied the order was seasonably cancelled or countermanded.” After requests 8 and 9, the court stated, — “Immaterial.” The defendant claims to be aggrieved by the refusal of the court to give said rulings.
The denial of the requests was not error. The results of the case did not depend upon the refusal of the judge to rule as requested. Ajax Shoe & Leather Co. v. Selig et al, 305 Mass. 389; Marquis v. Messier, 303 Mass. 553, 555; Strong v. Haverhill Electric Co., 299 Mass. 455. The requests of the defendant were based upon an assumption of incomplete performance and were therefore irrelevant. The special finding of fact made by the judge rendered the requests pertaining to damage irrelevant. Requests numbered 4 through 9 virtually embody the same *[87] maxim of law, namely, that the plaintiff is not entitled to be placed in a better position than if he had fully performed the contract; that the amount of expense incurred if there had been full performance must be taken into Consideration in awarding damages.
From the court’s finding of fact, “I am not satisfied the order was seasonably cancelled or countermanded,” a reasonable inference can be drawn that the trial justice found as a fact that since the order was not cancelled in time, everything that was necessary to substantially fulfill the order had already been done, and that there was therefore virtually full performance. The finding of fact by the judge supported a finding for the plaintiff for the contract price, namely, $180.00.
Although the defendant did not present any requests for ruling raising the question of law as to whether the finding of fact by the trial justice was warranted and was not therefore entitled to a review thereof, Reid v. Doherty, 273 Mass. 388, 389; Baker v. Davis, 299 Mass. 345, 348, an examination of the evidence herein recited indicates sufficient basis for the judge’s findings.
The plaintiff testified that everything had been done in relation to the order except the actual printing, the approximate cost of which was only 3 cents, the paper had already been ordered, the printing and publication contract made, the directory was already in the hands of the printer — and the space for the advertisement reserved as soon as the defendant forwarded the signed contract to the plaintiff. The plaintiff under its contract was obligated to distribute 50,000 Copies of the directory free to the Eastern States. The fact that the defendant cancelled an order covering 2J^ inches single column of one page for which space had already been reserved in a directory did not reduce the expense involved in distribution through a large territory and in large numbers. Although profits must be sufficiently certain to be capable of reasonable proof, mathematical accuracy of proof is not requried. Hawkins v. Jamrog, 277 Mass. 540, 544. Moreover, this contract could be considered as an agreement to reserve space for an advertisement, since everything was done except the actual printing of a 2inch single column, the cost of which was negligible, in which case there may be recovery for full performance. Haynes & Co. v. *[88] Nye, 185 Mass. 507, 509. “If the plaintiff at all times had available the space contracted for, it could recover the contract price.” As the defendant stopped the performance of the executory contract it subjected itself to such damages as would compensate the plaintiff for being deprived of the benefits of the contract. Eastern Advertising Co. v. Shapiro, 263 Mass. 228.
Louis Feinstein, Atty for Plff.
Nathan Loeb, Atty. for Deft.
When the defendant ordered the contract can-celled, the plaintiff was not put in a better position than it would have occupied had the contract been fully performed. He was put to the same expense in time and money as if' there had been such full performance. If he had to hire someone or expend effort and time to get a substitute ad, it would diminish his profits which he would have gotten if he printed the ad he had already received. The “measure of recovery” was the actual value of the contract, what the plaintiff would have received if it had not been deprived of its performance. Bethlehem Fabricator, Inc. v. Watts Co., 286 Mass. 556, 567, 568; Magnolia Metal Co. v. Gale, 189 Mass. 124, 132, 133.
The amount of the plaintiff’s overhead expense was not materially affected and decreased by the defendant’s cancellation order and the plaintiff was not obliged to take such expense into consideration. F. A. Bartlett Tree Expert Co. v. Hartney, 308 Mass. 407.

Report dismissed.